UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

WAUPACA FOUNDRY, INC.,

                              Plaintiff,

       vs.

HENKEL US OPERATIONS CORPORA-
TION, D/B/A HENKEL CHEMICAL MAN-
AGEMENT,

                             Defendant.

Case No.  2020-CV-00994

---

## COMPLAINT

---

Plaintiff Waupaca Foundry, Inc. ("Waupaca or Plaintiff"), by and through its attorneys, Michael Best & Friedrich LLP, states for its Complaint against Defendant, Henkel US Operations Corporation, doing business through its subsidiary/affiliate, Henkel Chemical Management (collectively, "Henkel"), the following:

### PARTIES

1.      Waupaca is among the world's largest independent iron foundries, employing roughly 4,500 people. The company produces gray, ductile, and compacted graphite iron castings, serving the automotive and light truck, commercial vehicle, agriculture, construction, material handling, and other industrial sectors. Its headquarters and principle place of business is located at 1955 Brunner Drive, in Waupaca, Wisconsin. It has three plants in Waupaca, Wisconsin and another plant in Marinette, Wisconsin. Waupaca is incorporated under the laws of the State of Wisconsin.

2.      Waupaca also has additional plants in Illinois, Indiana, Michigan, Tennessee, and a plant in Lawrenceville, Pennsylvania. The Lawrenceville facility – which is where Henkel in-

stalled the paint system that is the subject of this lawsuit – specializes in cast, machined and assembled suspension components, exhaust manifolds, and brackets for original equipment automotive manufacturers.

3.      Henkel US Operations Corp is, upon information and belief, the operating entity for numerous Henkel subsidiaries and affiliates, including Henkel Chemical Management, in the United States. These subsidiaries/affiliates manufacture adhesives, sealants, cleaners, laundry detergents, fabric softeners, dishwashing products, toothpaste, deodorants, soaps, adhesives, pastes, coatings, and lubricants. They serve the automotive, electronics, energy, furniture, and building and construction industries. Henkel US Operations Corp. is a Delaware corporation with its principle place of business at 1 Henkel Way, Rocky Hill, Connecticut.

4.      As noted above, Henkel Chemical Management is, upon information and belief, one of the operating subsidiaries/affiliates of Henkel US Operations Corp. It is the entity that convinced Waupaca to purchase the paint system that is the subject of this dispute, and was responsible for its installation at the Lawrenceville plant. It is also the entity that was responsible for the efforts to fix the paint system, all of which, as described below, were unsuccessful. The principle place of business for the Henkel Chemical Management office that worked on this project with the Lawrenceville plant is located at 210 Athens Way, Nashville, Tennessee.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $75,000.00.

6.      This Court has jurisdiction over Henkel because Henkel does business in Wisconsin and in this District, and because many of the acts complained of and giving rise to the claims

2

alleged occurred or are occurring in this District. Henkel purposefully directed its activities to Wisconsin, has purposefully availed itself to the benefits and privileges of conducting business in Wisconsin, and the claims made in this lawsuit arise foreseeably from the those activities in Wisconsin by Henkel. Moreover, under the operative contract documents between the parties, the Eastern District of Wisconsin, Green Bay Division, has exclusive jurisdiction over the subject matter of any dispute arising out of the parties' relationship.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims alleged occurred in this District. Moreover, under the operative contract documents between the parties, the Eastern District of Wisconsin, Green Bay Division, has exclusive venue over the subject matter of any dispute arising out of the parties' relationship.

## FACTUAL BACKGROUND

8.      As noted above, Waupaca's Lawrenceville plant specializes in iron castings and components for the automotive industry. As with any iron product, castings can be susceptible to deterioration over time. To protect against this, Waupaca's Lawrenceville plant would coat the castings it produced on-site, with specialized paints to prevent deterioration, rust, and extend the usable life of the castings.

9.      The painting process used is often dictated by the expectations and specifications of Waupaca's customers. Depending on the particular casting being produced, Waupaca must ensure that the casting is painted with the proper amount and type of paint to meet its customers' needs, demands, and specifications.

10.     Indeed, these painted castings are subjected to performance testing by Waupaca's customers to determine whether the castings have been coated with the correct amount and type

3

of paint, as well as whether the coating will adequately protect the casting. Waupaca's customers may reject any casting that fails this performance testing.

11. For many years, Waupaca's Lawrenceville plant utilized an electrophoretic painting system (the "E-Coat Paint System") to apply protective coatings to the castings it produced. Simply stated, the "e-coat" process deposits paint pigment onto a component by means of an electric field. At Lawrenceville, this was achieved through a "basket" system. Multiple parts at a time were placed into steel wire-meshed "baskets," and then submerged all at once into an electro paint bath. An electrical charge was applied through the bath and this would cause the coating to adhere to the part.

12. Using the E-Coat Paint System, Waupaca's Lawrenceville plant was able to apply protective coatings to multiple castings at a time, and the coatings on these castings met its customers' needs, demands, and specifications, all while the plant was operating at full capacity, for approximately twenty years.

13. In 2015, Henkel approached Waupaca with a proposal to convert Waupaca's existing E-Coat Paint System to a new, and supposedly better, system based upon a different coating process; one based upon a chemical reaction between the coating and the surface to achieve deposition and the ultimate thickness of the coating – the "a-coat" process.

14. Henkel touted its Bonderite M-PP 930C Autodeposition Coating paint system (the "A-Coat Paint System") as an upgrade to the E-Coat Paint System. "A-coating" differs from "e-coating" because electrical current is not needed to attract paint pigment and resin to the components being treated. The chemical reaction between the coating and surface in the "a-coating" process ostensibly allows the application equipment and process controls to be easier and less expensive. Henkel told the Lawrenceville plant that switching to the A-Coat Paint System would

4

result in significant cost savings, improvements in the quality and efficiency of paint application, and reduce Waupaca's chemical usage at the plant.

15. Henkel personnel were invited to, and came to the Lawrenceville plant on multiple occasions during 2015 and 2016. On each visit, they were allowed to view the E-Coat Paint System and Waupaca's iron casting production processes. Henkel personnel observed the "basket" system used by Waupaca, where multiple casting parts would fill the baskets and be submerged all at once into the electro paint baths. All of the questions asked by Henkel personnel during these visits were answered directly by Waupaca personnel, or were subsequently answered through emails and the exchange of documents.

16. After seeing the E-Coat Paint System in operation, Henkel heightened its attempts to convince Waupaca to purchase its A-Coat Paint System. Henkel represented that the new A-Coat Paint System would provide superior performance in terms of productivity, corrosion resistance, and environmental impact over the "e-coat" process. Moreover, Henkel claimed that its A-Coat Paint System would offer significant cost savings over the E-Coat Paint System.

17. To that end, in October 2015, Henkel presented a PowerPoint presentation titled "Bonderite M-PP 930C" to Waupaca, which touted the capabilities and functional benefits of upgrading to the A-Coat Paint System, including: "increased basket coating throughput," "lower overall production processing costs" and "performance above and beyond current E-Coat performance." The Bonderite M-PP 930C PowerPoint presentation included an "Applied Cost Comparison," which outlined a "Total Yearly Savings Utilizing Henkel 930C" of $380,000.00.

18. Later, in a further effort to induce Waupaca to purchase the A-Coat Paint System, Henkel provided additional information to Waupaca that was ultimately incorporated into a Waupaca PowerPoint presentation titled "Bonderite Project Supplement Information." This

5

presentation further touted the capabilities and functional benefits of upgrading to the A-Coat Paint System, including projected cost savings, based upon the information and representations provided by Henkel.

19.     Henkel indicated that it would create the system design and oversee the installation of the A-Coat Paint System at the Lawrenceville plant, using a contractor Henkel claimed to have used on prior a-coat projects. In the end, Henkel promised Waupaca a new, improved, "turnkey" paint system that would be capable of meeting all technical specifications required by Waupaca and its customers.

20.     Based upon Henkel's representations, analysis, and assurances, Waupaca decided to upgrade its existing E-Coat Paint System and purchase the A-Coat Paint System from Henkel.

21.     In or about August of 2016 and for months thereafter, Waupaca issued a series of purchase orders for the A-Coat Paint System, its installation, and the chemicals and other materials to support its operation. These documents constitute the contract between the parties, and contained the terms and conditions that governed the parties' transaction.

22.     Henkel accepted the contract and its terms and conditions, unmodified and without objection, by performance. Specifically, during the Lawrenceville plant's scheduled shut down before, during, and after the Fourth of July holiday in 2017, Henkel installed the bulk of the A-Coat Paint System.

23.     After the shutdown concluded and the plant went back to operational status, Waupaca began using the new A-Coat Paint System.

24.     Immediately after the system went into operation, it became apparent to Waupaca and Henkel that the A-Coat Paint System was not working as represented. Indeed, throughout the remainder of 2017 and into early 2018, Waupaca faced numerous performance and operational

issues with the A-Coat Paint System. These included, but were not limited to, film build up, unpainted pockets, touch marks on parts, parts not properly curing and/or drying which caused contamination in the production line, and the pumping and filtration system routinely being plugged with solid sludge requiring Waupaca to shut down the paint lines to perform clean outs and repairs. These problems required Waupaca to expend valuable person-hours monitoring the system, as well as visually inspecting and re-working non-compliant parts.

25.   Even some of the parts that initially appeared to be acceptable and appropriate for shipment to Waupaca's customers, were not. Waupaca began receiving complaints from its customers regarding the inferior paint quality of its castings. Specifically, customers noted blistering and premature rust in castings that appeared to occur after leaving the Lawrenceville plant.

26.   Waupaca notified Henkel of these issues contemporaneous with their happening. Over the course of the ensuing months, Henkel had personnel on-site at Lawrenceville on a daily basis attempting to fix the myriad problems Waupaca was experiencing with the A-Coat Paint System.

27.   As part of its efforts to bring the A-Coat Paint System into compliance with its representations and the contractual requirements, Henkel made several operational recommendations, and installed additional equipment, such as different filters and heaters, to the system. However, nothing ameliorated the problems with the A-Coat Paint System; the system, as well as Henkel's attempted fixes, were total failures.

28.   In the midst of Henkel's efforts to find an answer to the myriad problems the system was having, one of Henkel's employees, Ron Doran, confessed that prior to installing the A-Coat Paint System at Waupaca, Henkel had never run any of its system tests with a full or near-

7

full "basket" of parts. He also noted that this was the first time Henkel had installed an A-Coat Paint System in a foundry.

29.    In response to these repeated failures and recognizing that its efforts were insufficient to correct the problems with the system, on February 28, 2018, Henkel presented Waupaca with a series of "Coating Line Options." The alternative options proposed required additional costs to Waupaca (ranging from $250,000 to $1.2 million) or involved outsourcing the painting function entirely (either using an a-coat process or e-coat process vendor).

30.    Given that Waupaca no longer had any confidence whatsoever that Henkel could fix the problems it was having with the A-Coat Paint System, and in order to continue to meet its customer's demands, for the first time in over twenty years the Lawrenceville plant began the process of no longer coating parts on-site, outsourcing its painting operations to third-party vendors. By April 2018, nearly all of Waupaca's parts were being painted off-site by third parties representing a significant additional cost to Waupaca.

31.    On January 15, 2019, Waupaca officially closed down the A-Coat Paint System. Because of the A-Coat Paint System's failure to perform and Henkel's failure to provide any adequate repair or replacement, all painting is now outsourced to two third-party vendors, which utilize technology similar to Waupaca's former E-Coat Paint System. This outsourcing has caused Waupaca to experience ongoing operational issues and has resulted in significant continuing monetary loss to Waupaca.

32.    Prior to the commencement of this lawsuit, Waupaca retained an expert to calculate the total amount of its losses due to the failure of Henkel's A-Coat Paint System. That calculation, which is now a number of months old, exceeds $7.2 million.

8

## COUNT I – BREACH OF CONTRACT

33.     Waupaca incorporates by reference the allegations set forth in paragraphs 1 through 32, as though fully set forth herein.

34.     Waupaca entered into a contract with Henkel to purchase, install, and support the A-Coat Paint System with the understanding that it would satisfy Waupaca's requirements for use in its Lawrenceville plant.

35.     Henkel failed to comply with the contract in all material respects.

36.     Henkel materially breached the terms of the contract in several material respects including but not limited to by failing to provide and deliver an A-Coat Painting System that met the requirements, specifications, representations and warranties Henkel had promised, and by failing to thereafter provide proper support to Waupaca.

37.     Waupaca has complied with the contract in all material respects.

38.     As a direct and proximate cause of Henkel's breach of contract, Waupaca has suffered significant monetary damages in an amount in excess of $7.2 million, which will ultimately be proven at trial.

## COUNT II – BREACH OF EXPRESS WARRANTY

39.     Waupaca incorporates by reference the allegations set forth in paragraphs 1 through 38, as though fully set forth herein.

40.     After reviewing and analyzing Waupaca's painting operations and needs and to induce Waupaca to switch from using an E-Coat Paint System and to purchase Henkel's A-Coat Paint System, Henkel made express warranties to Waupaca about the use and performance of the A-Coat Paint System.

9

41.     Such warranties included, but are not limited to, performance guarantees and representations and additional express warranties that:

    a.  The A-Coat Paint System was merchantable and fit for the specific purpose for which intended; and

    b.  The A-Coat Paint System was free from all defects in design, workmanship and materials and be of the highest quality.

42.     Waupaca relied on these express warranties when deciding to purchase the A-Coat Paint System.

43.     Henkel breached these express warranties by failing to deliver a painting system that met performance guarantees and representations and because none of Henkel's express warranties proved to be true for the A-Coat Paint System in Waupaca's Lawrenceville plant.

44.     As a direct and proximate result of Henkel's breach of express warranties, Waupaca suffered significant and continuing monetary damages in an amount in excess of $7.2 million, which will ultimately be proven at trial.

## COUNT III – BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

45.     Waupaca incorporates by reference the allegations set forth in paragraphs 1 through 44, as though fully set forth herein.

46.     When Henkel sold Waupaca the A-Coat Paint System it knew the particular purpose for which Waupaca was planning to use the system in the Lawrenceville plant and knew or had reason to know that Waupaca was relying on Henkel's skill and judgment to select an appropriate paint system for use in the Lawrenceville plant.

47. Henkel breached this implied warranty of fitness for a particular purpose by selling an A-Coat Paint System that did not meet any of the performance expectations, as noted above.

48. As a direct and proximate result of Henkel's breach of implied warranties for fitness for a particular purpose, Waupaca has suffered significant and continuing monetary damages in an amount in excess of $7.2 million, which will ultimately be proven at trial.

## COUNT IV – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

49. Waupaca incorporates by reference the allegations set forth in paragraphs 1 through 48, as though fully set forth herein.

50. Henkel impliedly extended to Waupaca warranties of merchantability and that the A-Coat Paint System would be fit for the general purpose for which it was sold.

51. Henkel breached its implied warranty of merchantability.

52. As a direct and proximate result of Henkel's breach of implied warranties of merchantability, Waupaca has suffered significant and continuing monetary damages in an amount to be proven at trial.

## COUNT V – FRAUDULENT MISREPRESENTATION UNDER WISC. STAT. § 100.18

53. Waupaca incorporates by reference the allegations set forth in paragraphs 1 through 52, as though fully set forth herein.

54. In violation of Wis. Stat. §100.18, Henkel made false, misleading and deceptive statements and representations for the purpose of deceiving the public, including but not limited to representing that the A-Coat Paint System would:

  a. meet the promised performance specifications;

  b. result in cost savings; and

11

c.  result in reduced chemical usage.

55.  Waupaca is a person within the meaning of Wis. Stat. §100.18.

56.  Henkel made these representations with the intent to sell the A-Coat Paint System to Waupaca. Henkel intended that Waupaca would rely on Henkel's false, misleading and deceptive statements and representations regarding the A-Coat Paint System.

57.  Henkel made these representations before Waupaca intended to purchase the A-Coat Paint System, or any other product, from Henkel.

58.  Henkel's false, misleading and deceptive statements and representations and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Waupaca into purchasing the A-Coat Paint System.

59.  The facts misrepresented by Henkel were material facts in that Waupaca and any reasonable consumer would have considered them when deciding whether to purchase the A-Coat Paint System. Had Waupaca known that the A-Coat Paint System did not nor would not meet the qualities and characteristics advertised by Henkel, it would not have purchased the A-Coat Paint System.

60.  Waupaca has been harmed and/or continues to suffer damages and loss as a direct and proximate result of Henkel's acts.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff, Waupaca respectfully demands judgment in its favor and against Defendant, Henkel as follows:

a.  Compensatory damages including, but not limited to general damages, incidental damages and consequential damages;

12

b. Attorneys' fees and costs, double damages, and all other relief as provided by Wis. Stat. § 100.18;

c. Punitive damages;

d. Costs and disbursements, including reasonable attorney's fees as permitted by contract or law;

e. Pre and Post Judgment interest on all amounts awarded at the maximum rate allowed by law; and

f. Such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Waupaca hereby demands a trial by jury.

Dated this 1st day of July, 2020.

Respectfully submitted,

MICHAEL BEST & FRIEDRICH LLP

By: *s/Paul E. Benson*
Paul E. Benson, #1001457
pebenson@michaelbest.com
Alexander M. DeGuire, #1097948
amdeguire@michaelbest.com
790 North Water Street, Suite 2500
Milwaukee, WI 53202
Telephone: 414.271.6560
Facsimile: 414.277.0656

Michelle L. Dama, #1041809
mldama@michaelbest.com
One South Pinckney Street, Suite 700
Madison, WI 53703
Telephone: 608.257.3501
Facsimile: 608.283.2275

Attorney For Plaintiff, Waupaca Foundry, Inc.