# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### GREEN BAY DIVISION

---

WAUPACA FOUNDRY, INC.,                    Case No. 2020-CV-00994

                      Plaintiff,

vs.

HENKEL US OPERATIONS CORPORATION,
D/B/A HENKEL CHEMICAL MANAGEMENT,

                      Defendant.

---

## ANSWER AND AFFIRMATIVE DEFENSES

---

NOW COMES Defendant, Henkel US Operations Corporation[1] ("Defendant"), by and through its undersigned attorneys, Hansen Reynolds LLC and, and for its Answer and Affirmative Defenses to Plaintiff Waupaca Foundry, Inc.'s ("Plaintiff's"), Complaint filed on July 1, 2020 (Dkt. 1) ("Complaint"), hereby responds as follows:

    1.     Waupaca is among the world's largest independent iron foundries, employing roughly 4,500 people. The company produces gray, ductile, and compacted graphite iron castings, serving the automotive and light truck, commercial vehicle, agriculture, construction, material handling, and other industrial sectors. Its headquarters and principle place of business is located at 1955 Brunner Drive, in Waupaca, Wisconsin. It has three plants in Waupaca, Wisconsin and

---

[1] Defendant Henkel US Operations Corporation, as the entity sued in the above-captioned case, answers the Complaint solely on behalf of itself as an organization.  Henkel US Operations Corporation does not "do business as" Henkel Chemical Management, LLC as stated in the case caption.  Henkel Chemical Management, LLC is a separate legal entity that is not a party to this lawsuit.  Further, the Complaint defines "Henkel" as "Henkel US Operations Corporation, doing business through its subsidiary/affiliate, Henkel Chemical Management," throughout the Complaint.  Defendant expressly denies the accuracy of this assertion and therefore objects to and denies the accuracy of this definition for each and every allegation in which the term "Henkel" is used in the Complaint.

another plant in Marinette, Wisconsin. Waupaca is incorporated under the laws of the State of Wisconsin.

**ANSWER: Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 1 and therefore denies the same.**

2. Waupaca also has additional plants in Illinois, Indiana, Michigan, Tennessee, and a plant in Lawrenceville, Pennsylvania. The Lawrenceville facility – which is where Henkel installed the paint system that is the subject of this lawsuit – specializes in cast, machined and assembled suspension components, exhaust manifolds, and brackets for original equipment automotive manufacturers.

**ANSWER: On information and belief, Defendant admits that Waupaca has additional plants in Illinois, Indiana, Michigan, Tennessee, and a plant in Lawrenceville, Pennsylvania. Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations regarding the specialization of the Lawrenceville facility. Defendant denies that it installed the paint system that is the subject of this lawsuit.**

3. Henkel US Operations Corp is, upon information and belief, the operating entity for numerous Henkel subsidiaries and affiliates, including Henkel Chemical Management, in the United States. These subsidiaries/affiliates manufacture adhesives, sealants, cleaners, laundry detergents, fabric softeners, dishwashing products, toothpaste, deodorants, soaps, adhesives, pastes, coatings, and lubricants. They serve the automotive, electronics, energy, furniture, and building and construction industries. Henkel US Operations Corp. is a Delaware corporation with its principle place of business at 1 Henkel Way, Rocky Hill, Connecticut.

2

**ANSWER: Defendant admits that it has direct and indirect subsidiaries and affiliates and that Henkel Chemical Management, LLC is one of its subsidiaries. Defendant admits that some of its subsidiaries and affiliates manufacture a variety of products, some of which are listed in the allegation, but denies that Henkel Chemical Management, LLC manufactures any of the listed products. Defendant admits that its subsidiaries and affiliates provide products for the indicated industries. Defendant further admits that it is a Delaware corporation with its principle place of business at 1 Henkel Way, Rocky Hill, Connecticut. Defendant denies the remaining allegations that make up the balance of Paragraph 3.**

4.      As noted above, Henkel Chemical Management is, upon information and belief, one of the operating subsidiaries/affiliates of Henkel US Operations Corp. It is the entity that convinced Waupaca to purchase the paint system that is the subject of this dispute, and was responsible for its installation at the Lawrenceville plant. It is also the entity that was responsible for the efforts to fix the paint system, all of which, as described below, were unsuccessful. The principle place of business for the Henkel Chemical Management office that worked on this project with the Lawrenceville plant is located at 210 Athens Way, Nashville, Tennessee.

**ANSWER: Defendant admits that Henkel Chemical Management LLC ("HCM") is a subsidiary of Defendant. Defendant denies that HCM ever had any discussions with anyone at Waupaca regarding the purchase of a paint system and also denies that HCM was responsible for the installation of the paint system at the Lawrenceville plant. Defendant further denies that HCM was ever involved in any efforts to "fix" the paint system. Defendant denies that HCM "worked on this project with the Lawrenceville plant." Defendant denies the remaining allegations that make up the balance of Paragraph 4.**

3

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $75,000.00.

**ANSWER: Defendant admits that this Court has jurisdiction over this action based on the allegations in the Complaint and denies the remaining allegations in Paragraph 5.**

6.     This Court has jurisdiction over Henkel because Henkel does business in Wisconsin and in this District, and because many of the acts complained of and giving rise to the claims alleged occurred or are occurring in this District. Henkel purposefully directed its activities to Wisconsin, has purposefully availed itself to the benefits and privileges of conducting business in Wisconsin, and the claims made in this lawsuit arise foreseeably from the [sic] those activities in Wisconsin by Henkel. Moreover, under the operative contract documents between the parties, the Eastern District of Wisconsin, Green Bay Division, has exclusive jurisdiction over the subject matter of any dispute arising out of the parties' relationship.

**ANSWER: Defendant admits that this Court has jurisdiction over it for this specific dispute based on the allegations in the Complaint.  Plaintiff has not sufficiently pled a description of the alleged "operative contract documents between the parties" and has not attached such "operative contract documents" to the Complaint. Therefore, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations regarding the operative contract documents between the parties and the identification of an exclusive jurisdiction clause within those contract documents. Defendant denies the remaining allegations in Paragraph 6.**

4

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims alleged occurred in this District. Moreover, under the operative contract documents between the parties, the Eastern District of Wisconsin, Green Bay Division, has exclusive venue over the subject matter of any dispute arising out of the parties' relationship.

**ANSWER: Defendant admits that venue is proper for this specific dispute based on the allegations in the Complaint. Plaintiff has not sufficiently pled a description of the alleged operative contract documents between the parties and has not attached such operative contract documents to the Complaint. Therefore, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations regarding the operative contract documents between the parties and the identification of an exclusive venue clause within those contract documents. Defendant denies the remaining allegations in Paragraph 7.**

## FACTUAL BACKGROUND

8.     As noted above, Waupaca's Lawrenceville plant specializes in iron castings and components for the automotive industry. As with any iron product, castings can be susceptible to deterioration over time. To protect against this, Waupaca's Lawrenceville plant would coat the castings it produced on-site, with specialized paints to prevent deterioration, rust, and extend the usable life of the castings.

**ANSWER: Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 8 and therefore denies the same.**

5

9. The painting process used is often dictated by the expectations and specifications of Waupaca's customers. Depending on the particular casting being produced, Waupaca must ensure that the casting is painted with the proper amount and type of paint to meet its customers' needs, demands, and specifications.

**ANSWER: Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 10 and therefore denies the same.**

10. Indeed, these painted castings are subjected to performance testing by Waupaca's customers to determine whether the castings have been coated with the correct amount and type of paint, as well as whether the coating will adequately protect the casting. Waupaca's customers may reject any casting that fails this performance testing.

**ANSWER: Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 10 and therefore denies the same.**

11. For many years, Waupaca's Lawrenceville plant utilized an electrophoretic painting system (the "E-Coat Paint System") to apply protective coatings to the castings it produced. Simply stated, the "e-coat" process deposits paint pigment onto a component by means of an electric field. At Lawrenceville, this was achieved through a "basket" system. Multiple parts at a time were placed into steel wire-meshed "baskets," and then submerged all at once into an electro paint bath. An electrical charge was applied through the bath and this would cause the coating to adhere to the part.

**ANSWER: On information and belief, Defendant admits the allegations in Paragraph 11.**

6

12.     Using the E-Coat Paint System, Waupaca's Lawrenceville plant was able to apply protective coatings to multiple castings at a time, and the coatings on these castings met its customers' needs, demands, and specifications, all while the plant was operating at full capacity, for approximately twenty years.

**ANSWER: Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 12 and therefore denies the same.**

13.     In 2015, Henkel approached Waupaca with a proposal to convert Waupaca's existing E-Coat Paint System to a new, and supposedly better, system based upon a different coating process; one based upon a chemical reaction between the coating and the surface to achieve deposition and the ultimate thickness of the coating – the "a-coat" process.

**ANSWER: Defendant admits that the "a-coat" process is based upon a chemical reaction between the coating and the surface to achieve deposition. Defendant denies the remaining allegations that make up the balance of Paragraph 13.**

14.     Henkel touted its Bonderite M-PP 930C Autodeposition Coating paint system (the "A-Coat Paint System") as an upgrade to the E-Coat Paint System. "A-coating" differs from "e-coating" because electrical current is not needed to attract paint pigment and resin to the components being treated. The chemical reaction between the coating and surface in the "a-coating" process ostensibly allows the application equipment and process controls to be easier and less expensive. Henkel told the Lawrenceville plant that switching to the A-Coat Paint System would result in significant cost savings, improvements in the quality and efficiency of paint application, and reduce Waupaca's chemical usage at the plant.

7

**ANSWER: Defendant admits that "a-coating" differs from "e-coating" because electrical current is not needed to attract paint pigment and resin to the components being treated. Defendant admits that it stated that if Waupaca ran the system in accordance with the procedures and specifications discussed between the parties, then switching to the A-Coat Paint System would have the potential to result in cost savings, improvements in the quality and efficiency of paint application, and reduce Waupaca's chemical usage at the plant. Defendant denies the remaining allegations that make up the balance of the allegations in Paragraph 14. To the extent the allegations of Paragraph 14 seek to paraphrase or characterize the contents of a written document, the document speaks for itself and Defendant denies the allegations to the extent they are inconsistent with the document.**

15.    Henkel personnel were invited to, and came to the Lawrenceville plant on multiple occasions during 2015 and 2016. On each visit, they were allowed to view the E-Coat Paint System and Waupaca's iron casting production processes. Henkel personnel observed the "basket" system used by Waupaca, where multiple casting parts would fill the baskets and be sub- merged all at once into the electro paint baths. All of the questions asked by Henkel personnel during these visits were answered directly by Waupaca personnel, or were subsequently answered through emails and the exchange of documents.

**ANSWER: Defendant denies that all questions were answered directly by Waupaca personnel, or were subsequently answered through emails and the exchange of documents. Defendant admits that Henkel Corporation personnel were invited to and came to the Lawrenceville plant around 2015 and 2016 and were allowed to view Waupaca's E-Coat Paint System and Waupaca's iron casting production processes. Defendant admits that**

8

Henkel personnel observed the "basket" system used by Waupaca. Defendant denies the remaining allegations that make up the balance of Paragraph 15.

16.    After seeing the E-Coat Paint System in operation, Henkel heightened its attempts to convince Waupaca to purchase its A-Coat Paint System. Henkel represented that the new A-Coat Paint System would provide superior performance in terms of productivity, corrosion resistance, and environmental impact over the "e-coat" process. Moreover, Henkel claimed that its A-Coat Paint System would offer significant cost savings over the E-Coat Paint System.

**ANSWER:** Defendant admits that Henkel Corporation employees outlined potential cost savings if Waupaca ran the A-Coat system in accordance with the procedures and specifications discussed between the parties. Defendant further admits that it asserted that, if Waupaca ran the A-Coat system in accordance with the procedures and specifications discussed, then the A-Coat Paint system would provide superior performance in terms of productivity, corrosion resistance, and environmental impact over the "e-coat" process. Defendant denies the remaining allegations that make up the balance of Paragraph 16.

17.    To that end, in October 2015, Henkel presented a PowerPoint presentation titled "Bonderite M-PP 930C" to Waupaca, which touted the capabilities and functional benefits of upgrading to the A-Coat Paint System, including: "increased basket coating throughput," "lower overall production processing costs" and "performance above and beyond current E-Coat performance." The Bonderite M-PP 930C PowerPoint presentation included an "Applied Cost Comparison," which outlined a "Total Yearly Savings Utilizing Henkel 930C" of $380,000.00.

9

**ANSWER: Defendant admits that a PowerPoint presentation titled "Bonderite M-PP 930C" was presented to Waupaca in October 2015. To the extent the allegations of Paragraph 17 seek to paraphrase or characterize the contents of a written document, the document speaks for itself and Defendant denies the allegations to the extent they are inconsistent with the document.**

18.     Later, in a further effort to induce Waupaca to purchase the A-Coat Paint System, Henkel provided additional information to Waupaca that was ultimately incorporated into a Waupaca PowerPoint presentation titled "Bonderite Project Supplement Information." This presentation further touted the capabilities and functional benefits of upgrading to the A-Coat Paint System, including projected cost savings, based upon the information and representations provided by Henkel.

**ANSWER: Defendant admits that Henkel Corporation employees presented a PowerPoint presentation titled "Bonderite Project Supplement Information" to Waupaca. To the extent the allegations of Paragraph 18 seek to paraphrase or characterize the contents of a written document, the document speaks for itself and Defendant denies the allegations to the extent they are inconsistent with the document. Defendant denies the remaining allegations that make up the balance of Paragraph 18.**

19.     Henkel indicated that it would create the system design and oversee the installation of the A-Coat Paint System at the Lawrenceville plant, using a contractor Henkel claimed to have used on prior a-coat projects. In the end, Henkel promised Waupaca a new, improved, "turnkey"

10

paint system that would be capable of meeting all technical specifications required by Waupaca and its customers.

**ANSWER:** Defendant admits stating that if Waupaca ran Waupaca's A-Coat system in accordance with the procedures and specifications discussed between the parties, then Waupaca's A-Coat Paint system had the potential to meet technical specifications required by Waupaca and its customers to the extent that those specifications were provided to Henkel. Defendant denies the remaining allegations that make up the balance of Paragraph 19.

20. Based upon Henkel's representations, analysis, and assurances, Waupaca decided to upgrade its existing E-Coat Paint System and purchase the A-Coat Paint System from Henkel.

**ANSWER:** Defendant denies the allegations in Paragraph 20.

21. In or about August of 2016 and for months thereafter, Waupaca issued a series of purchase orders for the A-Coat Paint System, its installation, and the chemicals and other materials to support its operation. These documents constitute the contract between the parties, and contained the terms and conditions that governed the parties' transaction.

**ANSWER:** Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations regarding which specific contracts or purchase orders constitute the contract between the parties according to Waupaca as Plaintiff has not sufficiently pled a description of the alleged operative contract documents between the parties and has not attached such operative contract documents to the Complaint and therefore Defendant denies the allegations in Paragraph 21.

11

22.     Henkel accepted the contract and its terms and conditions, unmodified and without objection, by performance. Specifically, during the Lawrenceville plant's scheduled shut down before, during, and after the Fourth of July holiday in 2017, Henkel installed the bulk of the A-Coat Paint System.

**ANSWER: Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations regarding which specific contracts or purchase orders constitute the contract between the parties according to Waupaca as Plaintiff has not sufficiently pled a description of the alleged operative contract documents between the parties and has not attached such operative contract documents to the Complaint and therefore Defendant denies the allegations regarding the contract and its terms and conditions. Defendant denies the remaining allegations that make up the balance of Paragraph 22.**

23.     After the shutdown concluded and the plant went back to operational status, Waupaca began using the new A-Coat Paint System.

**ANSWER TO NO. 23: Admit.**

24.     Immediately after the system went into operation, it became apparent to Waupaca and Henkel that the A-Coat Paint System was not working as represented. Indeed, throughout the remainder of 2017 and into early 2018, Waupaca faced numerous performance and operational issues with the A-Coat Paint System. These included, but were not limited to, film build up, unpainted pockets, touch marks on parts, parts not properly curing and/or drying which caused contamination in the production line, and the pumping and filtration system routinely being

12

plugged with solid sludge requiring Waupaca to shut down the paint lines to perform clean outs and repairs. These problems required Waupaca to expend valuable person-hours monitoring the system, as well as visually inspecting and re-working non-compliant parts.

**ANSWER:** **Defendant admits that Waupaca faced numerous performance and operational issues with Waupaca's A-Coat Paint system during times that Waupaca personnel failed to run the A-Coat system in accordance with the procedures and specifications discussed, but denies the characterizations of the specifically identified performance and operational issues. Defendant denies the characterizations that immediately after the system went into operation, it became apparent to Waupaca and Defendant that Waupaca's A-Coat Paint System was not working as represented. Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations regarding the alleged problems requiring Waupaca to expend valuable person-hours monitoring its system, as well as visually inspecting and re-working non-compliant parts and therefore Defendant denies the remaining allegations in Paragraph 24.**

25.     Even some of the parts that initially appeared to be acceptable and appropriate for shipment to Waupaca's customers, were not. Waupaca began receiving complaints from its customers regarding the inferior paint quality of its castings. Specifically, customers noted blistering and premature rust in castings that appeared to occur after leaving the Lawrenceville plant.

13

**ANSWER:** **Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations and therefore Defendant denies the allegations in Paragraph 25.**

26.     Waupaca notified Henkel of these issues contemporaneous with their happening. Over the course of the ensuing months, Henkel had personnel on-site at Lawrenceville on a daily basis attempting to fix the myriad problems Waupaca was experiencing with the A-Coat Paint System.

**ANSWER:** **Defendant denies that Waupaca notified Defendant of all of these issues contemporaneous with their happening. Defendant admits that from time to time there were Henkel Corporation personnel on-site at Lawrenceville to assist the Waupaca personnel with the Waupaca paint system but denies that Henkel Corporation personnel were on site on a daily basis. Defendant denies the remaining allegations that make up the balance of Paragraph 26.**

27.     As part of its efforts to bring the A-Coat Paint System into compliance with its representations and the contractual requirements, Henkel made several operational recommendations, and installed additional equipment, such as different filters and heaters, to the system. However, nothing ameliorated the problems with the A-Coat Paint System; the system, as well as Henkel's attempted fixes, were total failures.

**ANSWER:** **Defendant admits that Henkel Corporation employees consulted with Waupaca personnel and offered potential options for addressing the alleged issues, such as**

14

different filters and heaters. **Defendant denies the remaining allegations that make up the balance of Paragraph 27.**

28.     In the midst of Henkel's efforts to find an answer to the myriad problems the system was having, one of Henkel's employees, Ron Doran, confessed that prior to installing the A- Coat Paint System at Waupaca, Henkel had never run any of its system tests with a full or near-full "basket" of parts. He also noted that this was the first time Henkel had installed an A-Coat Paint System in a foundry.

**ANSWER: Defendant denies the allegations in Paragraph 28.**

29.     In response to these repeated failures and recognizing that its efforts were insufficient to correct the problems with the system, on February 28, 2018, Henkel presented Waupaca with a series of "Coating Line Options." The alternative options proposed required additional costs to Waupaca (ranging from $250,000 to $1.2 million) or involved outsourcing the painting function entirely (either using an a-coat process or e-coat process vendor).

**ANSWER: Defendant admits that employees of Henkel Corporation consulted with Waupaca personnel and offered potential options for addressing issues with Waupaca's A-coat paint line. To the extent the allegations of Paragraph 29 seek to paraphrase or characterize the contents of a written document, the document speaks for itself and Defendant denies the allegations to the extent they are inconsistent with the document. Defendant denies the remaining allegations that make up the balance of Paragraph 29.**

30.     Given that Waupaca no longer had any confidence whatsoever that Henkel could fix the problems it was having with the A-Coat Paint System, and in order to continue to meet its

15

customer's demands, for the first time in over twenty years the Lawrenceville plant began the process of no longer coating parts on-site, outsourcing its painting operations to third-party vendors. By April 2018, nearly all of Waupaca's parts were being painted off-site by third parties representing a significant additional cost to Waupaca.

**ANSWER: Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 30 and therefore denies the same.**

31.     On January 15, 2019, Waupaca officially closed down the A-Coat Paint System. Because of the A-Coat Paint System's failure to perform and Henkel's failure to provide any adequate repair or replacement, all painting is now outsourced to two third-party vendors, which utilize technology similar to Waupaca's former E-Coat Paint System. This outsourcing has caused Waupaca to experience ongoing operational issues and has resulted in significant continuing monetary loss to Waupaca.

**ANSWER: Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 31 and therefore denies the same.**

32.     Prior to the commencement of this lawsuit, Waupaca retained an expert to calculate the total amount of its losses due to the failure of Henkel's A-Coat Paint System. That calculation, which is now a number of months old, exceeds $7.2 million.

**ANSWER: Defendant denies that any alleged loss was due to any failure by Defendant. Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 32 and therefore denies the same.**

16

## COUNT I – BREACH OF CONTRACT

33.     Waupaca incorporates by reference the allegations set forth in paragraphs 1 through 32, as though fully set forth herein.

**ANSWER: Defendant realleges and restates all of its above answers as though fully set forth herein.**

34.     Waupaca entered into a contract with Henkel to purchase, install, and support the A-Coat Paint System with the understanding that it would satisfy Waupaca's requirements for use in its Lawrenceville plant.

**ANSWER: Plaintiff has not sufficiently pled a description of the alleged operative contract documents between the parties and has not attached such operative contract documents to the Complaint and therefore Defendant denies the allegations in Paragraph 34.**

35.     Henkel failed to comply with the contract in all material respects.

**ANSWER: Defendant denies the allegations in Paragraph 35.**

36.     Henkel materially breached the terms of the contract in several material respects including but not limited to by failing to provide and deliver an A-Coat Painting System that met the requirements, specifications, representations and warranties Henkel had promised, and by failing to thereafter provide proper support to Waupaca.

**ANSWER: Defendant denies the allegations in Paragraph 36.**

37.     Waupaca has complied with the contract in all material respects.

17

**ANSWER:** Defendant denies the allegations in Paragraph 37.

38.     As a direct and proximate cause of Henkel's breach of contract, Waupaca has suffered significant monetary damages in an amount in excess of $7.2 million, which will ultimately be proven at trial.

**ANSWER:** Defendant denies the allegations in Paragraph 38.

## COUNT II – BREACH OF EXPRESS WARRANTY

39.     Waupaca incorporates by reference the allegations set forth in paragraphs 1 through 38, as though fully set forth herein.

**ANSWER:** Defendant realleges and restates all of its above answers as though fully set forth herein.

40.     After reviewing and analyzing Waupaca's painting operations and needs and to induce Waupaca to switch from using an E-Coat Paint System and to purchase Henkel's A-Coat Paint System, Henkel made express warranties to Waupaca about the use and performance of the A-Coat Paint System.

**ANSWER:** Defendant denies the allegations in Paragraph 40.

41.     Such warranties included, but are not limited to, performance guarantees and representations and additional express warranties that:

    a.     The A-Coat Paint System was merchantable and fit for the specific purpose for which intended; and

    b.     The A-Coat Paint System was free from all defects in design, workmanship and materials and be of the highest quality.

18

**ANSWER: Defendant denies the allegations in Paragraph 41.**

42.     Waupaca relied on these express warranties when deciding to purchase the A- Coat Paint System.

**ANSWER: Defendant denies the allegations in Paragraph 42.**

43.     Henkel breached these express warranties by failing to deliver a painting system that met performance guarantees and representations and because none of Henkel's express warranties proved to be true for the A-Coat Paint System in Waupaca's Lawrenceville plant.

**ANSWER: Defendant denies the allegations in Paragraph 43.**

44.     As a direct and proximate result of Henkel's breach of express warranties, Waupaca suffered significant and continuing monetary damages in an amount in excess of $7.2 million, which will ultimately be proven at trial.

**ANSWER: Defendant denies the allegations in Paragraph 44.**

## COUNT III – BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

45.     Waupaca incorporates by reference the allegations set forth in paragraphs 1 through 44, as though fully set forth herein.

**ANSWER: Defendant realleges and restates all of their above answers as though fully set forth herein.**

46.     When Henkel sold Waupaca the A-Coat Paint System it knew the particular purpose for which Waupaca was planning to use the system in the Lawrenceville plant and knew

19

or had reason to know that Waupaca was relying on Henkel's skill and judgment to select an appropriate paint system for use in the Lawrenceville plant.

**ANSWER: Defendant denies the allegations in Paragraph 46.**

47. Henkel breached this implied warranty of fitness for a particular purpose by selling an A-Coat Paint System that did not meet any of the performance expectations, as noted above.

**ANSWER: Defendant denies the allegations in Paragraph 47.**

48. As a direct and proximate result of Henkel's breach of implied warranties for fitness for a particular purpose, Waupaca has suffered significant and continuing monetary damages in an amount in excess of $7.2 million, which will ultimately be proven at trial.

**ANSWER: Defendant denies the allegations in Paragraph 48.**

**COUNT IV – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

49. Waupaca incorporates by reference the allegations set forth in paragraphs 1 through 48, as though fully set forth herein.

**ANSWER: Defendant realleges and restates all of their above answers as though fully set forth herein.**

50. Henkel impliedly extended to Waupaca warranties of merchantability and that the A-Coat Paint System would be fit for the general purpose for which it was sold.

**ANSWER: Defendant denies the allegations in Paragraph 50.**

51. Henkel breached its implied warranty of merchantability.

20

**ANSWER: Defendant denies the allegations in Paragraph 51.**

52.     As a direct and proximate result of Henkel's breach of implied warranties of merchantability, Waupaca has suffered significant and continuing monetary damages in an amount to be proven at trial.

**ANSWER: Defendant denies the allegations in Paragraph 52.**

**COUNT V – FRAUDULENT MISREPRESENTATION UNDER WISC. STAT. § 100.18**

53.     Waupaca incorporates by reference the allegations set forth in paragraphs 1 through 52, as though fully set forth herein.

**ANSWER: Defendant realleges and restates all of their above answers as though fully set forth herein.**

54.     In violation of Wis. Stat. §100.18, Henkel made false, misleading and deceptive statements and representations for the purpose of deceiving the public, including but not limited to representing that the A-Coat Paint System would:

a.     meet the promised performance specifications;

b.     result in cost savings; and

c.     result in reduced chemical usage.

**ANSWER: Defendant denies the allegations in Paragraph 54.**

55.     Waupaca is a person within the meaning of Wis. Stat. §100.18.

**ANSWER: Defendant denies the allegations in Paragraph 55.**

21

56. Henkel made these representations with the intent to sell the A-Coat Paint System to Waupaca. Henkel intended that Waupaca would rely on Henkel's false, misleading and deceptive statements and representations regarding the A-Coat Paint System.

**ANSWER: Defendant denies the allegations in Paragraph 56.**

57. Henkel made these representations before Waupaca intended to purchase the A-Coat Paint System, or any other product, from Henkel.

**ANSWER: Defendant denies the allegations in Paragraph 57.**

58. Henkel's false, misleading and deceptive statements and representations and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Waupaca into purchasing the A-Coat Paint System.

**ANSWER: Defendant denies the allegations in Paragraph 58.**

59. The facts misrepresented by Henkel were material facts in that Waupaca and any reasonable consumer would have considered them when deciding whether to purchase the A- Coat Paint System. Had Waupaca known that the A-Coat Paint System did not nor would not meet the qualities and characteristics advertised by Henkel, it would not have purchased the A- Coat Paint System.

**ANSWER: Defendant denies the allegations in Paragraph 59.**

60. Waupaca has been harmed and/or continues to suffer damages and loss as a direct and proximate result of Henkel's acts.

**ANSWER: Defendant denies the allegations in Paragraph 60.**

22

## <u>AFFIRMATIVE DEFENSES</u>

Pursuant to the Federal Statutes which require Defendant to allege affirmative defenses and/or motions to dismiss so as to preserve them, this answering Defendant alleges on information and belief as follows:

1.     Plaintiff's complaint fails, either in whole or in part, to state a claim upon which relief may be granted.

2.     Plaintiff failed to name indispensable and necessary parties.

3.     Plaintiff's claims are barred by the statute of limitations.

4.     Plaintiff's complaint may be barred by the doctrine of prior material breach of contract.

5.     Plaintiff's complaint may be barred by the doctrine of good faith and fair dealing.

6.     Plaintiff's complaint may be barred by the doctrine of impossibility of performance.

7.     Plaintiff's complaint may be barred by the doctrine of mutual mistake or one party's mistake and the other party's silence.

8.     Plaintiff's complaint may be barred by its own unclean hands.

9.     Plaintiff's complaint may be barred by its own inequitable conduct.

10.     Plaintiff's alleged damages are the result of intervening and superseding causes preventing Plaintiff a right to recover against Defendant.

11.     Plaintiff's claims may be barred by the doctrine of laches.

12.     Plaintiff's claims may be barred by the doctrines of waiver and estoppel.

13.     Plaintiff's claims may be barred by Plaintiff's own bad faith, wrongful acts, or misrepresentations.

23

14.     Plaintiff's claims may be barred, in whole or in part, by offset or setoff.

15.     Plaintiff has failed to mitigate, minimize, or avoid any damages allegedly sustained.

16.     Plaintiff's claims may be barred by the economic loss doctrine.

17.     Plaintiff's claims may be barred based on spoliation of evidence.

18.     If Plaintiff sustained any alleged damages, such damages were caused by or contributed to by acts, omissions, fault, negligence, assumption of risk, misuse, or other wrongful or improper conduct of Plaintiff.

19.     In the alternative, the damages alleged by Plaintiff, if any, were caused by the negligence or fault of third parties or others over whom Defendant had no control or right of control, and for which it is neither liable nor responsible.

20.     Any alleged conduct by Defendant was not the cause in fact or proximate cause of any injury alleged by Plaintiff.

21.     Defendant incorporates herein all other defenses available under state or federal law and discovered during the prosecution of this matter.

22.     Defendant reserves the right to amend its answer and additional defenses as discovery proceeds.

WHEREFORE, Defendant demands the entry of a judgment dismissing the Complaint on its merits and with prejudice and granting its costs in defending this action, together with such other and further relief as this Court deems just and proper.

**DEFENDANT DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

24

Dated at Milwaukee, Wisconsin this 13th day of October, 2020.

**HANSEN REYNOLDS LLC**

By: /s/ Timothy M. Hansen
     Timothy M. Hansen, SBN: 1044430
     John P. Shanahan, SBN:1088868
     301 N. Broadway, Suite 400
     Milwaukee, WI 53202
     Phone: (414) 326-4952
     Facsimile: (414) 273-8476
     thansen@hansenreynolds.com
     jshanahan@hansenreynolds.com

     Jessica C. Mederson, SBN 1087910
     Hansen Reynolds LLC
     10 E Doty St., Suite 800
     Madison, WI 53703
     Phone: (414) 455-0056
     Facsimile: (414) 273-8476
     jmederson@hansenreynolds.com

     *Attorneys for Defendant*